IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 31109-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HAL ROGER HARRISON aka STEVEN | ) | |
| FREDERICK BROWN, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, C.J. — Hal Harrison appeals his conviction for second degree unlawful possession of a firearm, which was predicated on a 1987 felony conviction in the state of California. Before trial, Mr. Harrison moved to dismiss the felon in possession charge because the Washington statute criminalizing an ex-felon's possession of a firearm does not apply "if the conviction has been the subject of a pardon, annulment, certificate of rehabilitation, or other equivalent procedure based on a finding of the rehabilitation of the person convicted." RCW 9.41.040(3). Mr. Harrison presented a 1993 certificate of rehabilitation issued by a California superior court.

The State opposed the motion, pointing out that under California law the certificate of rehabilitation operates as a recommendation that the Governor issue a pardon but is not sufficient in itself to restore the right to possess firearms in California.

The trial court denied the motion. A jury thereafter found Mr. Harrison guilty of the charge.

The exception to the crime of felon in possession for a rehabilitated ex-felon does not turn on whether his right to possess firearms has been restored in some other jurisdiction; it turns on whether there has been a judicial finding of rehabilitation that satisfies Washington law. The procedure required to obtain Mr. Harrison's California certificate of rehabilitation qualifies for the exception provided by RCW 9.41.040(3). We reverse Mr. Harrison's conviction of second degree unlawful possession of a firearm and remand with directions to dismiss the charge.

## ANALYSIS

Little discussion of the facts leading to the State's several charges filed against Mr. Harrison in May 2011 is required. He raises only one issue on appeal: whether the trial court erred in concluding that his certificate of rehabilitation issued under California Penal Code § 4852.13(a) was insufficient to support his pretrial *Knapstad*[1] motion to dismiss the State's charge of second degree unlawful possession of a firearm.

It is a crime in Washington for any person who has "previously been convicted . . . in this state or elsewhere of any felony" to possess a firearm. RCW 9.41.040(2)(a)(i).

---

[1] *State v. Knapstad*, 107 Wn.2d 346, 729 P.2d 48 (1986).

2

The statute excludes from its operation ex-felons who have been pardoned or rehabilitated; specifically, it provides:

> A person shall not be precluded from possession of a firearm if the conviction has been the subject of a pardon, annulment, certificate of rehabilitation, or other equivalent procedure based on a finding of the rehabilitation of the person convicted or the conviction or disposition has been the subject of a pardon, annulment, or other equivalent procedure based on a finding of innocence.

RCW 9.41.040(3).

It is undisputed that Mr. Harrison pleaded guilty and was convicted of felony custodial interference in California in 1987. In support of his motion to dismiss the State's charge of second degree unlawful possession of a firearm, however, he presented a certificate of rehabilitation issued by a California superior court in July 1993.

Under California law there are two different ways to acquire a pardon. The first and oldest procedure, provided by California Penal Code § 4800, authorizes the submission of pardon applications directly to the Governor. *People v. Zeigler*, 211 Cal. App. 4th 638, 652, 149 Cal. Rptr. 3d 786 (2012) (citing *People v. Ansell*, 25 Cal. 4th 868, 873-74, 24 P.3d 1174, 108 Cal. Rptr. 2d 145 (2001)). The second procedure was enacted during World War II, when the Governor's office was inundated with pardon applications received from ex-felons otherwise barred from serving in the military or working in defense industries. *Id.* It is that second procedure, provided by California Penal Code §§ 4852.01-.19, by which an ex-felon like Mr. Harrison applies for a certificate of

rehabilitation from a court. The certificate of rehabilitation constitutes the court's recommendation that the Governor grant a full pardon to the petitioner and further constitutes an application for such a pardon. CAL. PENAL CODE § 4852.13(a), .16.

RCW 9.41.040 includes "certificate of rehabilitation" in itemizing procedures that will exclude an ex-felon from the bar against possessing a firearm, but does not define the term or suggest whether what California refers to as a "certificate of rehabilitation" qualifies. In deciding Mr. Harrison's *Knapstad* motion, then, the trial court was required to construe the scope and meaning of the statutory exception. We review its construction de novo. *State v. Masangkay*, 121 Wn. App. 904, 907, 91 P.3d 140 (2004). We are aided by several earlier Washington decisions.

The Washington Supreme Court was first called upon to construe the types of procedures and findings that qualify an ex-felon for the rehabilitation exception provided by RCW 9.41.040(3) in *State v. Radan*, 143 Wn.2d 323, 330, 21 P.3d 255 (2001). In *Radan*, the court pointed out that the key language in the provision ("a pardon, annulment, certificate of rehabilitation, or other equivalent procedure based on a finding of the rehabilitation of the person convicted") is identical to language in ER 609(c), which governs the admissibility of criminal convictions for impeachment purposes.[2]

---

[2] Section (c) of ER 609 provides, in its entirety: "Effect of Pardon, Annulment, or Certificate of Rehabilitation. Evidence of a conviction is not admissible under this rule if (1) the conviction has been the subject of *a pardon, annulment, certificate of rehabilitation, or other equivalent procedure based on a finding of the rehabilitation of*

4

Washington's evidence rules were adopted in 1979 by our Supreme Court, which generally patterned them after the Federal Rules of Evidence. ER 609(c) is substantially similar to the 1972 version of Fed. R. Evid. 609(c) and tracks verbatim the key language about pardons, annulments, certificates of rehabilitation, and their equivalents with which we are concerned. *See Brundridge v. Fluor Fed. Servs., Inc.*, 164 Wn.2d 432, 450, 191 P.3d 879 (2008) (Washington rules generally patterned after the federal rules).

Advisory committee notes to Fed. R. Evid. 609(c) as proposed in 1972 identified a finding of rehabilitation as more important than an act of clemency, explaining:

> A pardon or its equivalent granted solely for the purpose of restoring civil rights lost by virtue of a conviction has no relevance to an inquiry into character. If, however, the pardon or other proceeding is hinged upon a showing of rehabilitation the situation is otherwise.

56 F.R.D. 183, 271 (1973). The advisory comments to the proposed rules also pointed out that "[a] similar provision is contained in California Evidence Code § 788." *Id.* The California evidence code provision was merely similar and differed in a respect that is important for present purposes: Section 788(b) of the California Evidence Code provided that a defendant's credibility could be attacked by evidence of his or her conviction of a felony unless, inter alia, "[a] certificate of rehabilitation *and pardon* has been granted to

---

*the person convicted*, and that person has not been convicted of a subsequent crime which was punishable by death or imprisonment in excess of 1 year, or (2) the conviction has been the subject of a pardon, annulment, or other equivalent procedure based on a finding of innocence." (Emphasis added.)

5

the witness under [Section 4852.01 and related provisions] of the Penal Code."

(Emphasis added.) The drafters' rejection of the California rule's requirement of *both* a

certificate of rehabilitation and pardon is consistent with the advisory comment's

emphasis on rehabilitation rather than clemency.

Washington statutes include no procedure whereby an ex-felon can obtain a

"certificate of rehabilitation" nor do Washington courts enjoy inherent authority to adopt

a procedure for certifying rehabilitation. *Masangkay*, 121 Wn. App. at 910-14.[3]

"Certificates of rehabilitation," as such, appear to be offered by only a handful of states.

*See* MARGARET LOVE & APRIL FRAZIER, CERTIFICATES OF REHABILITATION AND OTHER

FORMS OF RELIEF FROM THE COLLATERAL CONSEQUENCES OF CONVICTION: A SURVEY

OF STATE LAWS 2 (Oct. 1, 2006) (identifying only six states (New York, Illinois,

Connecticut, California, Nevada, and New Jersey) as offering administrative "certificates

of rehabilitation"), *available at* http://meetings.abanet.org/webupload/commupload/

CR203000/otherlinks_files/convictionsurvey.pdf.

Faced with this lack of clear meaning for "certificate of rehabilitation," *Radan* and

later *State v. R.P.H.*, 173 Wn.2d 199, 265 P.3d 890 (2011) have construed RCW

---

[3] In *State v. R.P.H.*, 173 Wn.2d 199, 203 n.3, 265 P.3d 890 (2011), the Supreme Court pointed out that it had granted review of the appellate court's decision in *Masangkay* that trial courts lack authority to issue a certificate of rehabilitation, but that it later dismissed review on the basis the case was moot. *See State v. Masangkay*, 153 Wn.2d 1017, 108 P.3d 1228 (2005) (granting review).

9.41.040(3) and provided guidance on the type of procedures and findings of rehabilitation that will exempt an ex-felon from the bar on possessing firearms.

*Radan* addressed the attempted prosecution of ex-felon Richard Radan for second degree unlawful possession of a firearm. Radan had been granted an early discharge from supervision for his felony conviction in Montana and pursuant to Montana law all of his civil rights, including his right to possess firearms, had been automatically restored. On the basis of the Montana restoration of rights, he successfully moved for dismissal of the charge in the trial court. The Court of Appeals reversed and the Supreme Court accepted review.

On appeal, Radan asked that the Washington statute be construed like its federal counterpart, under which all persons whose civil rights had been restored by the jurisdiction where the crime occurred were excepted from the bar on possessing firearms. 143 Wn.2d at 333 (discussing 18 U.S.C. §§ 921 and 922). Noting "critical differences in language between the two statutes," our Supreme Court refused to be guided by federal law. *Id.* Focusing instead on the key language of the exception stated in RCW 9.41.040(3)—a "pardon, annulment, certificate of rehabilitation, or other equivalent procedure based on a finding of the rehabilitation of the person convicted"—it held that the exception "requires something more than an automatic restoration of an individual's civil rights." 143 Wn.2d at 330.

The court then turned to the procedure by which Radan had secured his early discharge and concluded that it, unlike the automatic restoration of rights that followed, *did* constitute an "'other equivalent procedure'" based on a "'finding of rehabilitation'" that would qualify for the exception from RCW 9.41.040(3). *Id.* at 336. Montana's statutory procedure for early discharge required a recommendation of Radan's probation and parole officer and a finding by the court that a conditional discharge from supervision "'is in the best interests of the probationer and society; and . . . will not present unreasonable risk of danger to the victim of the offense.'" *Id.* at 334 (quoting former MONT. CODE ANN. § 46-23-1011(6)(a)(i) (1999)). In a footnote, the court observed that Radan could have petitioned a Washington court to have his right to possess firearms restored and the criteria for application—"'after five or more consecutive years in the community without being convicted or currently charged with any felony, gross misdemeanor, or misdemeanor crimes'"—would have been "far less stringent" than that required for conditional discharge from probation under Montana law. *Id.* at 335 n.2 (quoting former RCW 9.41.040(4)(b)(i) (1997)).

In *R.P.H.*, the court held that relief granted under Washington's former statutory procedure for relieving a person of the duty to register for a sex offense committed while under age 15 was equivalent to a certificate of rehabilitation based on a finding of rehabilitation for purposes of the felon in possession statute. To be relieved of the duty to register for such a sex offense, former RCW 9A.44.140(4)(b)(ii) (2000) required that the

8

applicant not have been adjudicated of any additional sex offenses during the 24 months following the adjudication and that he or she "proves by a preponderance of the evidence that future registration . . . will not serve the purposes of RCW 9A.44.130, 10.01.200, 43.43.540, 46.20.187, 70.48.470, and 72.09.330." A superior court had relieved R.P.H. from the requirement to register as a sex offender applying that standard; the court concluded that it was equivalent to a certificate of rehabilitation as a result of which R.P.H. should not be barred from exercising the right to possess firearms.

With these principles in mind, we turn to the California procedure under which Mr. Harrison obtained his certificate of rehabilitation. To obtain a certificate of rehabilitation in California, a party must petition the superior court of the county in which he lives. CAL. PENAL CODE § 4852.06. The petition may not be effectively filed until a period of rehabilitation following discharge from custody has passed, of at least five years. *Id.* § 4852.03. "'The superior court holds a hearing and considers testimonial and documentary evidence bearing on the petition.'" *Zeigler*, 211 Cal. App. 4th at 653 (quoting *Ansell*, 25 Cal. 4th at 875 (citing CAL. PENAL CODE §§ 4852.1, 4852.11)). "'To enter an order known as a certificate of rehabilitation, the superior court must find that the petitioner is both rehabilitated and fit to exercise the rights and privileges lost by reason of his conviction.'" *Id.* (quoting *Ansell*, 25 Cal. 4th at 875-76).

> "[T]he superior court conducts a thorough inquiry into the applicant's conduct and character from the time of the underlying crimes through the time of the certificate of rehabilitation proceeding. ([CAL. PENAL CODE]

9

§§ 4852.1-4852.12.) The standards for determining whether rehabilitation has occurred are high. (§§ 4852.05, 4852.13(a); see §§ 4852.11, 4852.13(b).) The decision whether to grant relief based on the evidence is discretionary in nature. . . . [T]here is no circumstance under which the statutory scheme requires or guarantees issuance of a certificate of rehabilitation by the superior court."

*Id.* at 653-54 (most alterations in original) (quoting *Ansell*, 25 Cal. 4th at 887-88 (citing *People v. Lockwood*, 66 Cal. App. 4th 222, 227-29, 77 Cal. Rptr. 2d 769 (1998); CAL. PENAL CODE § 4852.13(a) (a certificate of rehabilitation "may" issue upon the requisite showing of reform))).

The parties do not dispute that a certificate of rehabilitation alone does not restore an individual's gun rights in California; a Governor's pardon in response to the certificate is required. *See* CAL. PENAL CODE § 4852.17. Love's & Frazier's earlier-cited survey of certificates of rehabilitation and other forms of relief from collateral consequences of conviction suggest that as of the October 1, 2006 date of their manuscript, the prospect of a gubernatorial pardon in California was remote; they reported that "California pardons have been very rare in the past decade, and Governor Schwarzenegger has to date issued only three." LOVE & FRAZIER, *supra*, at 5.

A pardon from the Governor of California was not required. In order to receive his 1993 certificate of rehabilitation, Mr. Harrison had to demonstrate in a hearing that he lived an honest and upright life, conducted himself with sobriety and industry, and exhibited a good moral character, conforming to and obeying the laws of the land. CAL.

No. 31109-1-III
*State v. Harrison*

PENAL CODE § 4852.05. This appears to be a higher standard than required to show rehabilitation in *Radan* or *R.P.H.*, and higher than the standard required to obtain restoration of gun rights under RCW 9.41.040(4).

We therefore hold that a California certificate of rehabilitation obtained under the standard described qualifies as a certificate of rehabilitation under RCW 9.41.040(3). Mr. Harrison demonstrated that the charge of second degree felon in possession on or about May 1, 2011 should have been dismissed. We reverse his conviction of this charge and remand with instructions to dismiss it.

_____
Siddoway, C.J.

I CONCUR:

_____
Fearing, J.

11

No. 31109-1-III

Brown, J. (dissenting) — In my view, based on his flawed interpretation of our law, Mr. Hal Harrison incorrectly expects Washington to reach a different result than he could achieve in California. Considering he would end up having gun rights in Washington when he could not get them in the state where he committed his felony, he mistakenly suggests an anomalous result with puzzling full faith and credit implications under the guise of distorted judicial comity reasoning.

I agree with the State that the California certificate of rehabilitation is not an "other equivalent procedure" permitting Mr. Harrison to possess firearms under RCW 9.41.040(3). While the certificates are similar by name in the two states, they are very different in effect. Even Mr. Harrison recognizes California's certificate of rehabilitation results solely in a "*recommendation* to the [California] governor for a pardon to restore gun rights." Appellant's Br. at 4 (emphasis added). Thus, the California certificate of rehabilitation is not equivalent to a Washington "pardon," "annulment," or "certificate of rehabilitation," and is not an "other equivalent procedure" under RCW 9.41.040(3). It is undisputed that California does not treat its certificate of rehabilitation the same as a pardon; California does not restore gun rights based on a certificate of rehabilitation without an executive pardon. Finally, the State correctly argues *State v. Radan*, 143

Wn.2d 323, 21 P.3d 255 (2001), is distinguishable because Montana's early discharge procedure restored Mr. Radan's gun rights, but the California procedure did not restore Mr. Harrison's gun rights.

I would hold California's rehabilitation procedures did not restore Mr. Harrison's gun rights. Because I would affirm Mr. Harrison's unlawful possession of a firearm conviction, I respectfully dissent.

Brown, J.
_____
Brown, J.

2